Our second case is 23-1686 Everstar Merchandise v. Willis Electric. Okay, Mr. Babcock. Good morning, Your Honors. May it please the Court. With me today is Barry Herman from Womble Bond Dickinson. We were here before you three years ago on this case. The technology at issue here is fortunately very simple. We essentially have net lights that go over a Christmas tree or a bush. These are holiday lights. And within the net lights are electrical wires. Electrical wires contain polymer fibers. That's the technology. So pretty straightforward. As we all know, the name of the game is the claim. The focus of the earlier appeal and this appeal is the claim limitation that's addressed in the briefing. Namely, the claim limitation says each of the plurality of internally reinforced intermediate wires includes a plurality of conductors and one or more reinforcing strands. The limitation is in each of the claims of the patent and importantly in the three independent claims at issue on this appeal. It's important to note that the claim does not quantify the amount of copper or conductors in the strand. You're not challenging the Board's ruling about increased durability. We're not. The petition had three bases. Increased durability, as Judge Ranney mentions. There was also increased strength and then increased cost. So the previous appeal and this appeal focus on just that last reason to go by increased cost. And just to be clear, you're not challenging the Board's finding that the dependent claims are, they survive. If you witness appeal, the dependent claims survive. No, they don't survive because the only basis for the Board's decision is based upon the independent claims. So if you look at the Board's... You didn't brief the dependent claims. They have other limitations. And then in footnote four of your gray brief, you say this appeal is directed to the limitation you've talked about in the 037 patents three independent claims.  I understand you to have waived any challenge to the Board's finding about the dependent claims. Respectfully, Your Honor, we did say that those dependent claims do not add anything patentable. If we look at the Board's decision with regards to the dependent claims, they simply said because the independent claims fall, the dependent claims necessarily... Excuse me. Because the independent claims survive, the dependent claims necessarily survive for the same reasons. I should have understood your briefing to seek reversal for all the claims. I think the proper course here, Your Honors, and I've thought about this more since the briefing, is that reversal on the independent claims, because that's the key issue here that's on appeal. The only target that the Board gave us in its decision was the reduced cost. So that's what we addressed in this appeal. There was no other discussion about the dependent claims in their decision. The Board hasn't addressed the dependent claims. Not substantively, Your Honor. The source of the dependent claims would have to remand to have them address the other limitations. I think that's, candidly, Your Honor, I think that's probably the correct solution. Because the Board didn't address the substance of those dependent claims in their decision. We did not address those. Therefore, we didn't address those in our appeal because there's nothing to address. The only reason those claims were found to be patentable was because the independent claims were patentable. So because this issue, the patentability, the issue rises or falls on this one issue, reduced cost, reason to combine. If those claims fail for that reason, then the Board has to go back and look at the dependent claims once again and evaluate whether or not there's anything else in those claims that provides patentability. We think the answer is no. But the Board didn't address that in their final written decision. So there's nothing for you to review. Help me on, I appreciate that, on the independent claims, which is the focus of your appeal. Yes. Assume that I agree with you that there's not substantial evidence to support the Board's finding about a lack of motivation to combine based on cost alone. Just assume that I agree with you on that. What would I then do with that? Would I remand to the Board to consider if there is a motivation to combine affirmatively? Or would I say the only possible conclusion here is there is a motivation to combine? See, that's where we go, Your Honor. I think in this situation where you have such a simple 103 analysis under KSR, you have the two references at issue, both Camada and you have de Blasius. They both discuss cost reduction as important in this art. They're analogous arts. De Blasius says very specifically you reduce copper, reduce cost, you put in polymer fibers. A reasonable fact finder can only reach the conclusion under KSR, the very flexible standard under KSR, that it would have been obvious for a person of skill in the art to combine these references. The only way the Board actually was able to say it's not obvious is to raise the standard. It seems to me that the Board is saying that the problem here is that you failed to show or to provide any evidence as to what the actual cost reduction would be. No quantification. Was that correct? That's what they said, Your Honor, and that's why I started off with reading the claim, because the claim doesn't talk about how much copper, how much polymer fiber. It just simply says you have to have both. KSR just says as long as you have the reason to combine, as long as you can show that it would have been obvious to put polymer fibers with copper and the reason is to reduce cost, you're done because the claim limitation is satisfied. What the Board went on to say is, well, you didn't tell us how much copper would be reduced, what's the quantity, how much would be necessary, and that's not in the claim. Therefore, as a matter of law, it's impermissible. What's the implication there? The cost was either zero or zero plus. Is the Board trying to tell us that it has to be a zero plus situation? I think the Board was, to be candid, I think the Board was looking for a way to say they got it right the first time. And the institution decision was very clear. The institution decision said, look, under KSR, you have two references. They both teach cost reduction. The latest 120 says specifically reduce copper, add polymer fibers to reduce cost. Under the institution decision, the Board actually quoted KSR. It said when there's, I can quote it for you. It says they quoted KSR and they said when a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, 103 likely bars its patentability. And that's at Appendix 446 to 47. Tellingly, that quote and that discussion isn't in the final written decision. They excise that because that conclusion is correct. You don't have to look at experts. You don't have to look at any complicated analysis. You read the two references themselves. You look at what they teach. And the obviousness conclusion under KSR is readily apparent. But I thought your evidence suggested that in Kamada there were two 22-gauge twisted wires and that the proposal here was to eliminate one of those two twisted wires. Is that correct? You are correct, Your Honor. So we took a second step. So the lead on its face would be a 50% reduction in copper. So we took a second step. Our first step is to say, look, quantification isn't necessary. We didn't need to show how much copper would be reduced, how much cost savings there would be. We just need to show that there would be a motivation to put copper and polymer strands together. You've met the claim limitation. You've satisfied KSR. It's obvious. But we went on to say the board said they went through the entire record. There's no evidence of quantification. We said, first of all, quantification isn't required. But second of all, there is evidence of quantification. And we went through and we showed where the expert explained exactly what Judge Dyke said, which is instead of using a twisted pair of 22-gauge, you used one 22-gauge. That's a 50% reduction. We didn't give the board the 50% number. We just said from 222 to 123. Our brief shows the amount of cross-section for a 22-gauge wire, the amount of copper cross-section. So you can do the calculations to figure out exactly how much copper cross-section there is. But, yes, there was evidence actually of the quantification of reduction if that were a requirement, which it's not. Again, the claims don't require that quantification. And I'll just reemphasize the comments of this, the express statements from Camada, where it says, Camada exactly teaches that the absence of electrical wires within the rope greatly reduces the cost, and there is no expensive copper within the rope. And that's at Appendix 1466, Camada, Columns 11, Lines 3-6 and 14-15. So you have Camada saying, look, cost reduction is important. Copper is expensive. Let's reduce the amount of copper. You have De Blatis 120 saying, an object of the present invention is to provide a cable using just sufficient conductive material, typically copper, to ensure signal transmission. And it needs to be as inexpensive as possible to fabricate. Copper is becoming even more expensive. It's important to find new cable structures that minimize... I'm going back to what I was asking you before about whether we should remand, if we agree with you. You write in the Gray Brief, it's at your footnote 6, you point out you've been here before, you've already been subjected to one remand, continued sing-tonging, you say you'd waste our resources, patent offices, be prejudicial to your client. I get all that, but is any of that legally relevant? I think it is, Your Honor, to the extent that you can say, as a matter of law, a reasonable fact finder could not find that these claims are unobvious. But that's what we would have to say. We can't say, as a matter of law, it's debatable, but we feel badly for your client. You could say, if you were to be very conservative, you could say you applied the wrong standard, you elevated it, you required quantification, that's not correct under KSR. KSR is more flexible than that. Go back and do it again. Remand, vacate everything, go back and redo it again. That's where the footnote comes from. It's like, we already said that. We already said that to them. Cost reduction, is that irrelevant? And rather than actually do a legitimate review of the record for cost reduction, they came back, elevated the standards, and said, look, you haven't met it. So we're going to be back here in three years talking about copper and polymer fibers with you guys again, with this Court again, and that's not efficient for you, for the Board, for us. So I think at a minimum, I would request, Everstate would request, that you reverse on the independent claims. Can you do that as a matter of law? I think you can. I think if you determine that no reasonable fact finder could find otherwise, that reading just the references themselves, the Bladis and Kamada, those teachings are so clear on cost reduction that a reasonable, a person of ordinary skill in the art of reading those references wouldn't. That seems pretty complicated to me. You know, isn't the problem here is just the question of whether quantification is actually required under these claims? I don't think so, Your Honor. I mean, that's the question I'm saying. Okay. I think that's a question. It's a legitimate question, but then reading the claim, it's not there. There's nothing about quantity in the claim. I mean, that's the question, and the Board already answered that and said, yes, some sort of quantification is necessary. I think what they said was, they didn't point to the claim. They simply said, in order to do a, they didn't cite KSR either. They just said, in order to do a combination, you needed to show us how you would incorporate the Bladis into Kamada, which is, of course, wrong. You don't have to bodily incorporate the two references, so that was wrong. They said, and you need to show us how much copy would be reduced. Again, wrong because the claims don't require that. So I think this Court could say, the claims are clear. It's a legal question. It's a legal question. It's not a factual question. Not that, not this issue. Right. But why would we go to a factual issue and not just address the legal issue? It seems that the Board is saying that under the law, U.S. law of obviousness, quantification here of some sort was necessary to have been shown or established. They certainly did that, and that's legal error. And that's the easiest path for this panel to take is to say, legal error on the standard. Go back and redo. And what we're saying is, here it's so clear. It's so clear that these two references teach, have a motivation to combine under KSR, that no reasonable fact finder could reach a different conclusion. There's no contrary evidence on cost not providing a motivation. Nobody suggested that, right? Only if you look at expert testimony. I'm sure there are experts somewhere who said, oh, wouldn't have been obvious. But that's why I'm focusing on the references themselves. The expert didn't say cost wouldn't be sufficient. No. Their expert acknowledged that cost is relevant. Cost is always going to be relevant in these kinds of products. And you have both references acknowledging that. So there's no reason for us to come back in three years and discuss why the Board said cost, you know, this is still not obvious. This panel can look at it, super simple technology, and say, yes, as a matter of law, no reasonable fact finder could say these things, there would be no reason to combine them. Under KSR, there's a reason to combine them. Okay. I think we're out of time. We'll give you a few minutes for rebuttal. Thank you, Your Honors. Ms. Niles. Good morning, Your Honors. May it please the Court, Counsel, my name is Emily Niles, and I represent the appellee, Willis Electric. Okay. So the Board seemed pretty unhappy that we reversed them the first time around. They didn't appear to be particularly sympathetic to doing what we told them to do. So why is it that there isn't a cost motivation to make this combination? The Board's decision that there was no cost motivation is supported by substantial evidence in this case for multiple reasons. No witness never said that cost wouldn't be a motivation. Nobody said that cost isn't a motivation, right? To be a motivation to combine references, it needs to be able to achieve the claimed invention with a reasonable expectation of success. And so here, with the generally applicable reasoning of potentially cost reduction, you have to show that you could have achieved the claimed invention with a reasonable expectation of success. Sure, cost reduction would be great, but if you reduce cost... So why isn't the combination that they proposed for the motivation of cost reduction sufficient to show obviousness? What's missing? What's missing is evidence that the combination would actually reduce the cost. Well, they presented undisputed evidence that it would. They showed that Kumada used the UL standard of a twisted pair, and the proposal is to have a single line reinforced by plastic. That would reduce cost, right? Your expert didn't say it wouldn't reduce cost, did he? Our expert confirmed that this is a multidimensional analysis. And so when you're reducing... Answer my question. Did your expert say that the combination wouldn't result in cost reduction? Our expert opined that the evidence doesn't show that it would definitively reduce cost because when you're making an internally reinforced wire, there are multiple components of that manufacturing process. You're adding certain materials into the inside of the wire. There's other steps in the process. And so while reducing copper reduced the cost of copper, it does not necessarily reduce the cost of the internally reinforced wire. And we see in the record that there's an admission from Everstar's expert that, indeed, internally reinforced wires, he would expect them to be more expensive. Is there a fact dispute, though, about the amount of copper? Does your expert ever say... I think you just suggested your expert does not say that the combination would use less copper than Kumada alone, right? It just seems obvious. One in copper wire instead of two. That much is undisputed. Is that correct? Not necessarily, Your Honor, because what their experts do is piece together the size of the wire that they say would result from the combination. But in doing that, they're looking at the later U.L. standards, which would apply the 22... They're saying that the U.L. standard that applied at the time of Kumada required two twisted copper wires, and that the proposal is to reduce that by half and to use plastic reinforcements. So you're saving copper, right? You're saving copper, yes, Your Honor. Okay, but then help me... I don't understand the answer to my question, then. There is or is not a fact dispute on this record about whether the combined embodiment would reduce copper, reduce the amount of copper necessary. Is that disputed, or can we take that as undisputed? I think it's undisputed that just in itself, there could be reduced copper, but that does not mean that there would be automatically a reduction in cost. Because of possibly other components that would be necessary to make the combination? Correct, Your Honor, because... Can you give me a sense of at least an example of where I can see on record that latter fact dispute? Because it's now clearly uncontested that there would be reduced copper used in the combination. Well, I want to be clear, Your Honor, that those numbers were not presented in Everstar's arguments, and so the board didn't have those quantifications before them below. But everything they argued from was in the record before the board, correct? The evidence was in the record. The calculations were not in the record. There's no support... The calculations are very simple math, are they not? And that was their burden to prove and to show to the board, and they failed to do that. So at the end of the day, is your answer to my question that we can take it as agreed that there is less copper used in the combination than there was in the prior art? I mean, than there was in Kamada alone? Or should we view that as a fact dispute? I think that should be viewed as a fact dispute, and it's something the board looked at, considered their expert's evidence. You're contradicting yourself. You said a moment ago that there was no question about the combination resulting in a reduction in copper. Are you taking that back? What I'm trying to explain, Your Honor, is that when you're looking at changing the wire and the wire sizes the way that they're suggesting doing, if you just take out 22 AWG wire and have one of those wires yes, there is less copper when you have one wire as opposed to two. That's right, and I accept that. But here, you also have to have more. And so there's a fact dispute about you have to have more of the materials to have internally reinforced it. Yes, Your Honor. Not copper, right?  Okay. So we're back to it's undisputed for our purposes that there is less copper in the combination that they're relying on. There's less copper, but there's a factual dispute as to whether there's actually... Just give me an idea of where I can see evidence of that factual dispute because presumably you're here to tell me I need to, at most, remand to the board to resolve this fact dispute, but I'd like to see where that fact dispute is in the record.  So multiple of the experts testified about that factual dispute as to the cost and the multidimensional aspect of that. Dr. Brown testified about the multidimensional design issues. That's at Appendix 2309. Everstar's expert acknowledged the... 2309? Yes, Your Honor. And Dr... 2320. Okay, 28. That's his definition, which part? Yes, Your Honor. Okay. If you look at page 47 in the top right corner, it's discussing the cost issue, and from lines approximately 4 to 22, he testifies about the multidimensional design issues and how the material choice and design choices could impact cost. Okay, but he doesn't say that the cost of making the change would be such that it would deter somebody from doing it. I think that goes back to the fact that... No, no. Yes, no. Not in this specific section. I think it's... Well, is there some other specific section where he says that? Not specific to cost. What he testifies to is that a person of ordinary skill in the art would not have been motivated to change the design from something that was consistent and acceptable under the UL standard to something that was not consistent with the UL standard. No, you don't. In determining obviousness, you don't worry about regulatory requirements. We've said that repeatedly with respect to FDA requirements. You can have an invention which might not have received regulatory approval. You can't say that somebody hasn't invented something because the current regulations might not allow it. True, Your Honor, but here you have to show that there is a motivation that would arrive at the claim to invention and that there would be a reasonable expectation of success. At that time, the evidence in the record showed that there wasn't an expectation of success under the current UL standards. What case says that you don't have a reasonable expectation of success because there might need to be a regulatory change to implement the invention? My argument is not that there isn't a case that says that, Your Honor. A lot of pharmaceutical companies would be pretty unhappy with that standard. But looking at the evidence that's in the record, Everstar has not put forth sufficient evidence that this combination would have had a reasonable expectation of success, that the motivation would have resulted... ...a reasonable expectation of success would even be in dispute at this point. I thought the only thing that was in dispute was motivation at the bottom. I disagree, Your Honor. The board's determination of obviousness was about whether a person of ordinary skill in the art would have that reason, whether they would have been motivated. And in order to be actually motivated to do something, especially when we're talking about a generally applicable rationale... ...couched that rationale on the basis that there was no showing of the quantity of costs to be had. That's a business decision on that, not reasonable success. I think we're talking about similar issues there. Because the board was looking for evidence that there would actually be a cost reduction such that you would achieve the claimed invention, that there really was a motivation. And so they're not requiring a quantification in the evidence. They're saying they're looking for some evidence of the reduced cost, and that doing that... You agree that the record shows that there would be reduced costs by the combination. That's sufficient, right? I disagree that the record shows that there would be reduced costs for the reasons we talked about in terms of copper versus an entire internally reversed wire. I think there were multiple experts you were going to point to because, as Judge Dyke points out, I don't know that Mr. Brown actually said enough here to put into whether the costs would actually be lesser or not lesser in the combination. Did you have something else you could point us to? Dr. Fantoni acknowledged this issue, I believe, at Appendix 2417. 2417? Yes, 2417 through 2418. 2417 through 2418, he recognized the multidimensional issue. But does he recognize the multidimensional issue means there's a vacancy over whether costs could actually increase under the combined Kumano-Kubladis environment? I think that gets to the issue, that their experts did not sufficiently opine on what the impact of the cost would be. Because you can reduce costs. Sure, that's a great goal. But if you reduce costs to the extent that there is insufficient durability, insufficient strength, you can't pass the UL standard. What case is it that suggests that when you provide a motivation you have to rule out other conflicting motives? I'm not aware of any case that says that. Well, the obviousness analysis is a flexible one. So the board can look at evidence that there is motivation. What case suggests that the burden is on someone trying to show obviousness, that they have to show that there aren't other considerations that might cut the other way? I don't think that they have to show that there aren't other considerations. But the board can consider all of those considerations and weigh them. And here, the board correctly weighed the different considerations. And especially where there's a generally applicable rationale of cost, it requires evidence to support that in order to guard against hindsight, which is really the issue here, where Everstar's experts are looking at Willis Electric's invention in the 037 patent and the later UL standards and justifying their analysis for the combination based on those later inventions and later standards that became accepted in the industry. If I think you've conceded that the amount of copper would be reduced in the Kamada-DuBois combination, which I think you have conceded, it seems to me I can't affirm. My choices are either to remand or to reverse because that concession seems inconsistent with how the board saw this case. Am I wrong about that? I disagree, Your Honor, because the board found that there wasn't sufficient evidence of a reduced cost. In theory, did the different references talk about reduced cost? Yes. But Everstar failed to show that that was a real reason supported by evidence that a person of ordinary skill in the art would have made the combination. There was no dispute that the amount of copper would be reduced? As I mentioned before, this quantification was not in the record. And it was Everstar's burden to prove that. There's no dispute about that. Don't we at minimum have to send this back to the board? I disagree, Your Honor, because there is substantial evidence to support the first determination that it's not obvious because of that reasonable expectation of success that's lacking here. Without the, as I said, reducing cost can only get you so far if you're not going to get the claimed invention, which is a net light that's internally reinforced such that it can have sufficient strength and durability. And Everstar's experts failed to show that it would have those things. In fact, they've conceded in this appeal that their evidence of sufficient strength and durability was insufficient. No, that's not what they conceded. They conceded that they're not arguing that increased strength and durability provide a motivation. Without sufficient strength and durability, the reduced cost does not get you to achieve the invention that was claimed here, that would have sufficient durability to be a net light that could withstand the elements outdoors, ice and wind and things like that. And so, again, it goes back to having sufficient evidence to support that a reduced cost would have motivated a person of ordinary skill in the art to combine those references with a reasonable expectation of success. And they did not do that here. Thank you. Thank you, Your Honors. I'll be brief. Two points. The board in the final written decision on remand did take an argument from Willis. That's where they took a statement out of context from Dr. Fantone, our expert, his deposition, where he said, in a different context, adding polymer fiber to a copper wire would increase its cost. As Judge Reyna pointed out, there are three, and Judge Dyke, three different reasons to combine increased durability, increased strength, and then what's at issue here, reduced cost. We put in the footnote in our opening brief and the whole section at the end of our reply brief where we address this out-of-context quote. When Dr. Fantone was deposed, he was deposed about all three reasons to combine. When he was discussing increased strength, they asked him about, okay, if you take a copper wire with a given cross-section, you add polymer fibers to it, is that going to increase the cost? He said, yeah, because now you have the same cross-sectional diameter. Not at issue here. Later on in that same deposition where they talked about the other reason to combine, reduced cost, he very clearly said, of course, if you reduce the amount of copper, then you're going to reduce the cost. So what Willis continues to do, and they did it again today, and the panel hasn't seized upon that, fortunately, but our last section in our reply brief, section F27, goes through and shows how, in context, Dr. Fantone's deposition testimony does not support Willis at all. It completely supports us. And so we caution the panel not to take a snippet out of context. And then finally, in light of this record, Your Honors, I do believe we would advocate that for the three independent claims, for this one reason, reversal is appropriate. Send the dependent claims back on remand, vacate, go back and revisit those. But the evidence is so strong here, so compelling, there is a reason to combine. I think this panel can say, as a matter of law, it should be reversed. Reasonable expectation of success, is that in front of us? No. And this is a mechanical invention. This is putting copper and polymer fibers in a wire. I mean, this is not a complicated technology where it could fail. This is well-known technology, so there's not an issue. Okay, thank you. Thank you, Your Honors.